UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
SOLOMON TAYLOR,                    :
     Plaintiff,                    :
                                   :
     v.                            :  Case No. 3:18cv664(AWT)
                                   :
KEVIN DAVIS,                       :
     Defendant.                    :
```

## INITIAL REVIEW ORDER

The plaintiff, Solomon Taylor, is incarcerated at Cheshire Correctional Institution ("Cheshire"). He has filed a civil rights complaint against Correctional Officer Kevin Davis and a motion for appointment of counsel. For reasons set forth below, the complaint is being dismissed in part and the motion for appointment of counsel is being denied.

## I.   Complaint [ECF No. 1]

The complaint includes allegations regarding a use of force by the defendant in November 2017 and verbal harassment by the defendant in December 2017. The plaintiff claims that the defendant violated his federal constitutional and statutory rights and a Connecticut statute.

### A.   Legal Standard

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and

"dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  Id.  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must include sufficient factual allegations to

meet the standard of facial plausibility.  See Harris v. Mills,
572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**B.  Factual Allegations**

At approximately 5:00 p.m. on November 23, 2017 at Garner
Correctional Institution ("Garner"), the plaintiff was
performing his job as a food service worker in A-Pod.  See
Compl., ECF No. 1, at 3 ¶ 7.  Between 5:00 p.m. and 6:00 p.m.,
prison officials called a code orange in response to an assault
on a correctional staff member in B-Pod.  See id. ¶¶ 7-8.
Correctional Officers Fulton and Gorrack directed the plaintiff
and other food service workers to put everything away.  See id.
¶ 9.

Correctional Officer Davis entered A-Pod and began to
scream at inmates, including the plaintiff and another food
service worker, as he locked the doors to the cells in the unit.
See id. at 4 ¶¶ 11-12.  As the plaintiff grabbed his food tray
and began to walk to his cell, Officer Davis followed the
plaintiff "mu[t]tering like a mad man."  See id. ¶ 13.  When the
plaintiff entered his cell and grabbed the cell door to close
it, Officer Davis slammed the cell door on the plaintiff's left
hand.  See id. ¶ 14.  The door bounced open and Officer Davis
slammed the door shut again.  See id. ¶ 15.  The plaintiff's

3

cellmate called Officers Fulton and Gorrack to the cell for assistance.  See id. ¶ 16.  When Officer Gorrack arrived, Officer Davis left the unit.  See id.

After Officer Gorrack observed the injury to the plaintiff's hand, he called the medical department.  See id. at 5 ¶ 17.  A nurse came to the plaintiff's cell, examined his hand, wrapped it and provided the plaintiff with ice and medication.  See id. ¶ 18.

The plaintiff wrote to the warden and accused Officer Davis of deliberately slamming the cell door on his hand.  See id. ¶ 20.  Officer Davis became aware that the plaintiff had written to the warden.  See id. ¶ 21.

At some point between 11:50 p.m. on December 8, 2017 and 12:10 a.m. on December 9, 2017, Officer Davis came to the plaintiff's cell, banged on the door, swore, made sexually suggestive comments and called the plaintiff names.  See id. at 5-6 ¶¶ 22-24.  Officer Davis also announced that he did not care whether he was sued.  See id. ¶ 25.

### C.  Discussion

The plaintiff contends that Officer Davis violated his Eighth Amendment rights by slamming the cell door on his hand and by verbally harassing him using sexually explicit taunts.

4

The plaintiff claims that the conduct of Officer Davis also
violated Connecticut General Statutes § 53a-183 and the Prison
Rape Elimination Act of 2003 ("PREA"), Publ. L. No. 108-79, 117
Stat. 972 (originally codified at 42 U.S.C. §§ 15601-15609;
transferred to 34 U.S.C. §§ 30301-30309, effective September 1,
2017).

### 1.   Official Capacity Claims

The plaintiff sues the defendant in his individual capacity
only.  See Compl. at 1.  For relief, however, the plaintiff
seeks an injunction, a declaration that the defendant violated
his federal constitutional rights and compensatory and punitive
damages.  Injunctive and declaratory relief may only be awarded
against a defendant in his or her official capacity.
Accordingly, the court liberally construes the complaint as
seeking injunctive and declaratory relief from the defendant in
his official capacity.  The court will not construe the
complaint as seeking money damages from the defendant in his
official capacity because such a request would be barred by the
Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159 (1985)
(Eleventh Amendment, which protects the state from suits for
monetary relief, also protects state officials sued for damages
in their official capacity); Quern v. Jordan, 440 U.S. 332, 342

5

(1979) (Section 1983 does not override a state's Eleventh
Amendment immunity).

### a.   Declaratory Relief in Official Capacity

The plaintiff seeks a declaration that the defendant
violated his Eighth Amendment rights by slamming the cell door
on his hand and verbally harassing him using sexually explicit
taunts.  Declaratory relief serves to "settle legal rights and
remove uncertainty and insecurity from legal relationships
without awaiting a violation of the rights or a disturbance of
the relationships." Colabella v. American Institute of Certified
Public Accountants, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132,
at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted).  Thus,
declaratory relief operates in a prospective manner to allow
parties to resolve claims before either side suffers great harm.
See In re Combustion Equip. Assoc. Inc., 838 F.2d 35, 37 (2d
Cir. 1988).

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court
held that an exception to the Eleventh Amendment's grant of
sovereign immunity from suit existed to permit a plaintiff to
sue a state official acting in his or her official capacity for
prospective injunctive relief for continuing violations of
federal law.  Id. at 155-56.  But the exception to Eleventh

6

Amendment immunity does not apply to claims against state
officials seeking declaratory or injunctive relief for prior
violations of federal law.  See Puerto Rico Aqueduct and Sewer
Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the
Eleventh Amendment "does not permit judgments against state
officers declaring that they violated federal law in the past");
Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to
extend the reasoning of *Young* . . . to claims for retrospective
relief") (citations omitted).

The allegations in the complaint relate to incidents that
occurred at Garner in November and December 2017.  The plaintiff
is currently confined at Cheshire.  The plaintiff's request for
a declaration that the defendant violated his federal
constitutional rights in 2017 at Garner cannot be characterized
as "prospective."  Thus, the plaintiff's request for declaratory
relief does not fall within the exception to the Eleventh
Amendment immunity set forth in Ex parte Young.

Absent a request for prospective relief to remedy ongoing
violations of federal law, a declaration that the defendant
violated the plaintiff's Eighth Amendment rights or engaged in
illegal conduct in the past is barred by the Eleventh Amendment.
See Green, 474 U.S. at 71-73 (if there is no allegation of an

7

ongoing violation of federal law, the Eleventh Amendment
prevents federal courts from providing notice relief or a
declaratory judgment that state officials violated federal law
in the past).  The request seeking declaratory relief is
dismissed.  See 28 U.S.C. § 1915A(b)(1).

> **b.   Injunctive Relief in Official Capacity**

The complaint includes a three-part request for injunctive
relief.  Specifically, the plaintiff seeks court orders
directing the defendant to: (1) be evaluated by a psychiatrist
for his anger issues and to refrain from inmate contact until
the evaluation is complete; (2) attend anger management classes;
and (3) refrain from harassing the plaintiff.

"An injunction is a drastic and extraordinary remedy, which
should not be granted as a matter of course." Monsanto Co. v.
Geertson Seed Farms, 561 U.S. 139, 165 (2010) (citation
omitted).  "The party requesting permanent injunctive relief
must demonstrate (1) irreparable harm ... and (2) actual success
on the merits." Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir.
2012).  The party seeking a permanent injunction must also
demonstrate that an adequate remedy at law is unavailable.  See
N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362
(2d Cir. 1989) ("Generally, to obtain a permanent injunction a

party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.").

The plaintiff alleges that the defendant is employed at Garner.  He does not allege that the defendant harassed him at any time after December 8, 2017.  As indicated above, the plaintiff is currently incarcerated at Cheshire.

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983). Thus, an inmate's request for injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different facility.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief") (citations omitted); Hallett v. New York State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000) ("Because [inmate] is no longer incarcerated and under the supervision of any of the named defendants, his requests for injunctive relief are dismissed as moot.").  Any request for relief related to conduct by the defendant in 2017 at Garner is now moot.

9

Even if the relief sought was not rendered moot by the plaintiff's transfer from Garner, he has not alleged that the defendant has engaged in continuing unconstitutional conduct. Thus, the plaintiff has not demonstrated that he will suffer imminent or irreparable harm if the court does not grant the relief requested.

Furthermore, 18 U.S.C. § 3626(a)(1) provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Additionally, a district court is precluded from "grant[ing] or approv[ing] any prospective relief unless [it] finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. The relief sought by the plaintiff which includes the defendant's participation in anger management classes and a psychiatric evaluation, extends further than necessary and is not the least intrusive means necessary to correct the alleged constitutional violation. The court concludes that there is no arguable legal or factual basis for the orders seeking permanent injunctive relief against the

defendant for past conduct.  The request for injunctive relief is dismissed.  See 28 U.S.C. § 1915A(b)(1).

      **2.   Eighth Amendment – Excessive Force**

The plaintiff asserts that Officer Davis violated his rights under the Eighth Amendment by deliberately slamming the cell door on his hand and causing him injury.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances.  When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim.  See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the plaintiff must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted).  The extent of the plaintiff's injuries as a result of the defendant's conduct

is not a factor in determining the objective component.  <u>See</u>
<u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) ("core judicial
inquiry" is "not whether a certain quantum of injury was
sustained," but rather whether unreasonable force was applied
given the circumstances); <u>Hudson</u>, 503 U.S. at 9 ("[w]hen prison
officials maliciously and sadistically use force to cause harm,
contemporary standards of decency are always violated"
irrespective of whether significant injury is present).

The subjective component requires the inmate to show that
the prison officials acted wantonly and focuses on "whether
force was applied in a good-faith effort to maintain or restore
discipline, or maliciously and sadistically to cause harm."
<u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley v. Albers</u>, 475 U.S. 312,
320-321 (1986)).  The court considers factors including "the
need for application of force, the relationship between that
need and the amount of force used, the threat reasonably
perceived by the responsible officials, and any efforts made to
temper the severity of a forceful response."  <u>Id.</u>  (internal
quotations and citation omitted).

The plaintiff has alleged that he was following the orders
of other officers to put his food service items away and to
return to his cell when Officer Davis slammed the cell door on

his hand twice.  The court concludes that a reasonable inference
could be drawn that the force used by Officer Davis in slamming
the cell door constituted an effort to cause the plaintiff harm
rather than an effort to maintain discipline or restore order.
The excessive force claim against Officer Davis in his
individual capacity will proceed.

### 3.   Eighth Amendment – Verbal Harassment

The plaintiff alleges that Officer Davis engaged in sexual
harassment when he swore at him and used sexually explicit
taunts on December 8 or December 9, 2017.  The plaintiff
contends that this conduct constituted cruel and unusual
punishment and deliberate indifference to the plaintiff's health
or safety or conditions of confinement.

Although the Constitution does not require "comfortable"
prison conditions, the Eighth Amendment imposes certain duties
on prison officials to provide for inmates' basic human needs,
including: "adequate food, clothing, shelter, [] medical care,
and . . . safety.  Farmer v. Brennan, 511 U.S. 825, 832-33
(1994) (internal quotation marks and citations omitted).  To
state a deliberate indifference to health or safety claim or a
conditions claim under the Eighth Amendment, an inmate must
demonstrate both an objective and a subjective element.

13

To demonstrate the objective element, an inmate must allege facts showing that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." Id. at 834 (internal quotation marks and citations omitted). To demonstrate the subjective element, an inmate must allege facts showing that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. See id. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. Id. at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 F.3d at 280.

It is well-settled that verbal harassment and threats do not rise to the level of a constitutional violation. See Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to

the level of a constitutional violation"); <u>Purcell v. Coughlin</u>,
790 F.2d 263, 265 (2d Cir. 1986) (Verbal harassment and name
calling, absent physical injury, are not constitutional
violations cognizable under § 1983).

The plaintiff alleges that on one occasion, either December
8 or December 9, 2017, Officer Davis stood outside his cell and
harassed him by swearing at him, calling him derogatory names
and directing sexually suggestive taunts to him.  There are no
allegations that Officer Davis made physical contact with the
plaintiff in connection with the verbal harassment or taunting.
Nor are there any allegations indicating that the verbal
harassment or name-calling deprived the plaintiff of a basic
human need or life necessity.  Thus, the allegations of verbal
harassment, taunting and name-calling do not establish the
objective component of an Eighth Amendment claim.  <u>See</u> <u>Cotz v.
Mastroeni</u>, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (holding
that verbal harassment and threats, regardless of how
inappropriate, unprofessional or reprehensible, do not violate a
federally protected right and are not cognizable under section
1983).  The verbal harassment claim is dismissed.  <u>See</u> 28 U.S.C.
§ 1915A(b)(1).

With respect to the plaintiff's allegation that the

harassment was sexual in nature, the Second Circuit has held
that isolated episodes of harassment or touching, none of which
are severe enough to be sufficiently serious, do not state an
Eighth Amendment claim.  See Boddie v. Schnieder, 105 F.3d 857,
860-61 (2d Cir. 1997)(affirming district court's dismissal of
the plaintiff's Eighth Amendment claim for sexual harassment
because it found that although the isolated incidents during
"which [the plaintiff] was verbally harassed, touched, and
pressed against without his consent" were "despicable and, if
true . . . m[ight] potentially be the basis of state tort
actions. . . . they d[id] not involve a harm of federal
constitutional proportions").  In Crawford v. Cuomo, 796 F.3d
252 (2d Cir. 2015), the Second Circuit clarified its holding in
Boddie relating to sexually assaultive searches.  The court held
that "a corrections officer's intentional contact with an
inmate's genitalia or other intimate area, which serves no
penological purpose and is undertaken with the intent to gratify
the officer's desire or to humiliate the inmate, violates the
Eighth Amendment."  Id. at 257.  Thus, one isolated incident of
sexual abuse that was severe could constitute conduct that was
sufficiently serious or harmful enough to meet the objective
prong of the Eighth Amendment standard.  See id.

The plaintiff does not allege that Officer Davis touched him in connection with the taunting.  Nor are there any allegations that Officer Davis harassed or assaulted the plaintiff physically or verbally at any other time after the incident in early December 2017.  Thus, the court concludes that the allegations against Officer Davis do not state a claim of sexual harassment.  See Keaton v. Ponte, No. 16 CIV. 3063 (KPF), 2017 WL 3382314, at *10 (S.D.N.Y. Aug. 4, 2017) (dismissing prisoner's Eighth Amendment claims of sexual abuse against female corrections officers where there was no "illicit physical contact between a corrections officer and an inmate" and the corrections officers' alleged "verbal harassment," encouraging the inmate to use the shower, watching him shower, and making sexual gestures with lipsticks and tongues, "without more, [were] not actionable" as cruel and unusual punishment in violation of the Eight Amendment).  The claim of verbal sexual harassment against Officer Davis is dismissed.  See 28 U.S.C. § 1915A(b)(1).

### 4.  Violation of the PREA

The plaintiff asserts that the use of sexually explicit taunts and name-calling by Officer Davis violated the PREA.  The PREA was enacted to address the problem of rape in local, state

17

and federal prison facilities by creating a commission to study
the issue and to develop national standards for the detection,
prevention, reduction and punishment of prison rape.  See PREA,
34 U.S.C. §§ 30301-30307 (2017).

> There is nothing in the PREA that suggests that
> Congress intended to create a private right of action
> for inmates to sue prison officials for non-compliance
> with the Act.  See Chao v. Ballista, 772 F. Supp. 2d
> 337, 341 n.2 (D. Mass. 2011) (collecting cases and
> noting that "every court to address the issue" has
> held that the PREA does not provide a private cause of
> action); Chinnici v. Edwards, No. 1:07-cv-229, 2008 WL
> 3851294, at *3 (D. Vt. Aug. 12, 2008) ("[T]he PREA
> confers no private right of action. The PREA is
> intended to address the problem of rape in prison,
> authorizes grant money, and creates a commission to
> study the issue.") (citation omitted). The Act
> authorizes the compilation of data and statistics
> concerning incidences of prison rape and the
> development and implementation of national standards
> for the detection, prevention, reduction, and
> punishment of prison rape.  See PREA, 42 U.S.C. §§
> 15602-03, 15606-07. The Act does not grant any
> specific rights to inmates. Moreover, the United
> States Supreme Court has held that in the absence of
> "an 'unambiguous' intent to confer individual rights,"
> such as a right to sue, courts will not imply such a
> right in a federal funding provision.  Gonzaga Univ.
> v. Doe, 536 U.S. 273, 279-80 (2002).

Jones v. Forbes, No. 3:16CV14 (VAB), 2016 WL 4435081, at *3 (D.
Conn. Aug. 19, 2016).

Because the PREA does not provide a private right of
action, the allegations that Officer Davis violated the PREA by
calling the plaintiff names and using sexually explicit taunts

18

as he stood outside the plaintiff's cell fails to state a claim upon which relief may be granted.  The claim for violation of the PREA is dismissed.  <u>See</u> 28 U.S.C. § 1915A(b)(1).

### 5.  Violation of Connecticut Statute

The plaintiff contends that Officer Davis's verbal harassment also constituted a violation Connecticut General Statutes § 53a-183.  This criminal statute provides that:

> (a) "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm.

Conn. Gen. Stat. § 53a-183(a).

This statute does not appear to apply to verbal harassment by an individual in the physical presence of the victim. Rather, it applies to verbal harassment over the telephone, by telegraph, by mail, via computer or by any other form of written communication.  Furthermore, it contains no provision creating a private right of action to enforce it and there is no indication that such a right was implicitly created in the statute.  Accordingly, the claim asserted pursuant to Conn. Gen. Stat. § 53a-183 is dismissed as lacking an arguable factual or

legal basis.  <u>See</u> 28 U.S.C. § 1915A(b)(1).

## II.  **Motion for Appointment of Counsel [ECF No. 10]**

The plaintiff seeks the appointment of <u>pro</u> <u>bono</u> counsel.
He claims that prior to filing his motion, he sent letters
seeking representation to five Connecticut law firms.  He
attaches responses from three law firms declining to represent
him.  <u>See</u> Mot. Appoint at 2-4.

The court notes that State of Connecticut Department of
Correction Administrative Directive 10.3 provides that the
Department of Correction "shall contract with a law firm/agency
to provide legal assistance to inmates and inmate access to the
civil judicial system."[1]  <u>Id.</u> at 10.3(3).  The scope of the
services provided by the law firm or agency includes rendering
assistance "through advice, counsel and physical preparation of
meaningful legal papers such as writs, complaints, motions and
memorandum of law for claims having legal merit."  <u>Id.</u> at
10.3(4).  The Inmates' Legal Aid Program ("ILAP") is the
organization under contract with the Department of Correction to
provide legal assistance to Connecticut prisoners.  <u>See</u> <u>Jones v.</u>
<u>Forbes</u>, No. 3:15-CV-613 (VAB), 2015 WL 6757523, at *1 (D. Conn.

---

[1] Administrative Directive 10.3, Inmate Legal Assistance
(revised November 18, 2015), is available
at <u>http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad1003pdf.pdf</u>.

Nov. 5, 2015) ("The Department of Correction has afforded inmates access to legally trained persons through their contract first with Inmates' Legal Assistance Program, and now with the Inmate Legal Aid Program run by the law firm Bansley Anthony.")

The plaintiff does not indicate whether he has communicated with ILAP.  Although the attorneys at ILAP may not be able to represent the plaintiff in this action, they may be available to speak to him by telephone and to answer questions or provide instruction on how to file or respond to motions or conduct discovery and also may be available to draft motions or memoranda in response to motions.

The plaintiff has not demonstrated that assistance is unavailable through ILAP.  Accordingly, the motion for appointment of counsel is denied without prejudice to re-filing at a later stage of the litigation, provided the plaintiff has attempted to secure assistance from ILAP.

## ORDERS

The court enters the following orders:

**(1)**  The requests for declaratory and injunctive relief, the Eighth Amendment verbal and sexual harassment claims, the claim under the PREA and the claim of a violation of Conn. Gen. Stat. § 53a-183 are hereby **DISMISSED** pursuant to 28 U.S.C. §

21

1915A(b)(1).  The Eighth Amendment excessive force claim will proceed against the defendant in his individual capacity.  The Motion for Appointment of Counsel, [**ECF No. 10**], is hereby **DENIED** without prejudice to re-filing at a later stage of the litigation, provided the plaintiff has attempted to secure assistance from ILAP.

(2)  **Within twenty-one (21) days of this order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for Correctional Officer Kevin Davis and mail a copy of the complaint, this order and a waiver of service of process request packet to him in his individual capacity at his current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)  Defendant Davis shall file his response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.  If he chooses to

file an answer, he shall admit or deny the allegations and respond to the cognizable claim referred to above.  He may also include any and all additional defenses permitted by the Federal Rules.

**(4)**   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

**(5)**   All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)**   The Prisoner Litigation Office shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is so ordered.

Signed this 4th day of October, 2018, at Hartford, Connecticut.

_____
/s/AWT
Alvin W. Thompson
United States District Judge